**Marco DeGIROLAMO, Plaintiff,**

v.

**ALITALIA–LINEE AEREE ITALIANE, S.P.A. and Continental Airlines, Inc., Defendants.**

**No. Civ.A. 99–4453(JAG).**

United States District Court, D. New Jersey.

Sept. 12, 2001.

Douglas L. Parker, J. Steven Farr, Institute for Public Representation, Washington, D.C., Paul H. Aloe, Richard M. Zuckerman, Jacob Inwald, Rubinbaum LLP, Short Hills, NJ, James J. Weisman, Kleo J. King, Eastern Paralyzed Veterans Association, Jackson Heights, NY, for plaintiff.

Mark Gertner, Freeman & Gertner, South Orange, NJ, Lawrence A. Mentz, Patricia A. Moores, Biedermann, Hoenig, Massamillo & Ruff, New York City, NY, for defendants.

## OPINION

GREENAWAY, District Judge.

This matter comes before the Court on: (1) Plaintiff Marco DeGirolamo's motion for summary judgment; and (2) Defendant Continental Airlines' ("Continental") and Alitalia–Linee Aeree Italiane, S.p.A.'s ("Alitalia") (collectively, the "Defendants") cross-motion for summary judgment, pursuant to Fed.R.Civ.P. 56(c).

## BACKGROUND

In 1997, pursuant to a contract called the Alliance Agreement ("code-share agreement"), Continental authorized Alitalia to sell tickets for some of the seats on certain flights Continental operated. Under this code-share agreement, Continental operates the flights using its own aircraft and crew, but some of the passengers on the plane hold tickets issued directly by Continental, while other passengers on the plane hold tickets issued by Alitalia.

In July of 1998, Plaintiff, who uses a wheelchair for mobility, sought to buy a round-trip ticket from Alitalia for travel on July 25, 1998, on Alitalia Flight 641 from Newark, New Jersey to Rome Italy, returning to Newark on Alitalia Flight 640. However, during the course of Plaintiff's telephonic conversation with Alitalia's customer service department, Alitalia refused to sell him a ticket for that flight unless he

bought a second ticket for an attendant or companion to fly with him. Alitalia's employees were acting pursuant to an Alitalia policy that required an attendant for certain passengers who use wheelchairs if the flight lasts longer than three hours. Plaintiff never bought the ticket in question. Instead, he purchased a more expensive ticket on another airline and had to fly from John F. Kennedy Airport, which is farther from his home than Newark International Airport.

Although Plaintiff sought to buy an Alitalia ticket, the flight in question (which bore a dual designation as Alitalia Flight 641 and Continental Flight 40) was on a Continental plane, staffed by Continental crew, leaving from a Continental gate in the Continental terminal, on a Continental route from Newark to Rome. It is uncontested that had Plaintiff attempted to purchase his ticket directly from Continental, Continental could not have required him to have an attendant.

Plaintiff seeks the following relief from Continental: (a) a declaratory judgment that Continental is responsible for the discriminatory conduct of Alitalia; and (b) a hearing on compensatory and punitive damages. Plaintiff also seeks relief from Alitalia in the form of: (a) a declaratory judgment that Alitalia violated 49 U.S.C. § 41310(a); and (b) a hearing on compensatory and punitive damages.[1]

## LEGAL STANDARD

Summary judgment is appropriate under Fed.R.Civ.P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Orson, Inc. v. Miramax Film Corp.,* 79 F.3d 1358, 1366 (3d Cir.1996). Since this matter comes before the Court on cross-motions for summary judgment, and the parties have agreed that there are no genuine issues as to any material facts for trial, it is appropriate for this Court to rule on the pending motions as a matter of law.

## DISCUSSION

### Claims Against Alitalia Under the Federal Aviation Act, 49 U.S.C. § 41310(a)

Plaintiff asserts that Alitalia's imposition of an attendant requirement due to his disability violated 49 U.S.C. § 41310(a). This provision of the Federal Aviation Act prohibits "unreasonable discrimination" against persons with disabilities in the provision of "foreign air transportation." [2]

Defendants argue that, as a threshold matter, Plaintiff has no private right of action under 49 U.S.C. § 41310(a). However, federal courts have consistently held

---

**1.** Oral argument was heard on this matter on June 4, 2001. At such argument, Defendants' counsel revealed that the code-share agreement at issue had been terminated over two months earlier. That statement is reiterated in the affidavit of Alitalia's Administration Manager, Orlando R. D'Oro, filed with the Court on June 7, 2001. Based on Defendants' representations, Plaintiff withdrew all of his original requests for injunctive relief as such relief became moot. It is also noteworthy that Defendants had raised the doctrine of primary jurisdiction in their motion papers, urging the Court to refer this matter to the Department of Transportation in the first instance. The Court finds that Plaintiff's withdrawal of the request for injunctive relief eliminates any concern about the applicability of the doctrine of primary jurisdiction and the Court will not address that issue.

**2.** Specifically, the section provides that: "An air carrier or foreign air carrier may not subject a person, place, port, or type of traffic in foreign air transportation to unreasonable discrimination." 49 U.S.C. § 41310(a). This provision replaced the former Section 404(b) of the Federal Aviation Act, 49 U.S.C. § 1374(b), which prohibited discrimination in air transportation.

that persons discriminatorily denied access to travel have an implied right of action under § 404(b) of the Federal Aviation Act, the statutory predecessor to 49 U.S.C. § 41310(a).[3] Therefore, the Court will not belabor the issue and simply finds that Plaintiff's allegations do indeed give rise to a private right of action under 49 U.S.C. § 41310(a).

■ Turning to the merits of Plaintiff's arguments,[4] Plaintiff posits that § 41310(a) requires that the eligibility restrictions imposed on a person because of his disability must have some "rational relation" to the actual employment or services to be provided. (Pl's Br. at 7.) Even if the Court were to accept Plaintiff's definition borrowed from civil rights and disability law, the Court finds that Alitalia's restriction was not "unreasonable." Rule 20 of Alitalia's tariff on file with the Department of Transportation ("DOT") and in effect at all relevant times to this litigation governs the Carriage of Physically Handicapped Passengers and provides, in pertinent part, as follows:

> Except as provided in paragraph (B) below ... carrier will refuse to transport any passenger whose physical condition is such that he may need the assistance of another person to move expeditiously to an exit in the event of an emergency, unless the passenger is accompanied by another person who is capable of assisting such passenger in expeditiously moving to an exit....
>
> Note: In case of any doubt as to the passenger's capability of expeditiously moving to an exit without assistance, the passenger will be required to demonstrate privately the capability of moving from one chair to another. If he can do so, he will be deemed capable of expeditiously moving to an exit without assistance.

Ex. "A" to Aff. of Orlando D'Oro. It is abundantly clear from this tariff that the eligibility restriction imposed by Alitalia on disabled individuals had a very real and rational relation to the services to be provided. Namely, Alitalia's policy was geared at ensuring the safety of its passengers. The policy simply is not "unreasonable." Plaintiff's motion for summary judgment against Alitalia is DENIED and Defendants' cross-motion for summary judgment is GRANTED.[5]

### Claims Against Continental under the Air Carrier Access Act, 49 U.S.C. § 41705[6]

■ As part of its responsibility under the ACAA, the DOT has promulgated regulations which expressly prohibit domestic airlines from requiring passengers who use

---

3. *See, e.g., Wolgel v. Mexicana Airlines,* 821 F.2d 442, 443 (7th Cir.1987); *Hingson v. Pac. Southwest Airlines,* 743 F.2d 1408, 1411–12 (9th Cir.1984); *Mahaney v. Air France,* 474 F.Supp. 532, 534 (S.D.N.Y.1979).

4. There is a question as to whether 49 U.S.C. § 41310 and its prohibition on unreasonable discrimination in "foreign air transportation" can be extended to encompass the reservation practices of a foreign air carrier before such air transportation even commences. Since the Court ultimately concludes that there was no unreasonable discrimination, the Court finds it unnecessary to address such issue.

5. Since the Court finds that Alitalia did not engage in unreasonable discrimination under 49 U.S.C. § 41310, it follows logically that Continental cannot be liable vicariously under this section either. Therefore, Plaintiff's motion for summary judgment against Continental on this ground alone is DENIED and Defendants' cross-motion for summary judgment is GRANTED.

6. As of the date this case arose, the Air Carrier Access Act ("ACAA") stated:

> In providing air transportation, an air carrier may not discriminate against an otherwise qualified individual on the following grounds:

wheelchairs to travel with an attendant except in very narrow circumstances.[7] The regulations further prohibit a domestic airline from requiring a passenger to pay for an attendant if the passenger believes he or she is capable of traveling independently. 14 C.F.R. § 382.35(c). Continental does not deny that, had Continental itself applied such a rule to Plaintiff, it would have violated the ACAA regulations. Rather, it maintains that it is not legally responsible for the actions of Alitalia, a foreign carrier which at the time of the events which gave rise to Plaintiff's claims, was expressly exempt from compliance with ACAA regulations.[8] Plaintiff, on the other hand, argues that Continental discriminated against him via its contractual arrangement which allowed Alitalia to sell tickets for seats on a Continental flight, effectively enabling Continental to do indirectly what it could not do directly.

■ Section 382.7 of the ACAA states that air carriers are prohibited from discriminating on the basis of disability "directly or through contractual, licensing, or other arrangements...." 14 C.F.R. § 382.7. As explained by the DOT, "[u]nder § 382.7, all discrimination by carriers via the actions of contractors is prohibited, regardless of the role played by contractors."[9] The DOT has held that § 382.7 is meant to prevent air carriers from doing through a contractor what the air carriers cannot do themselves:

> Once Congress has designated who the regulated party is, all the regulated party's activities that affect the protected class are subject to nondiscrimination requirements. Otherwise, the purpose of the statute could not be achieved. If a contractor to the regulated party (e.g., a private bus company that provides bus service on certain routes, a security screening contractor for an airline) performs functions which the regulated party would otherwise perform with its own employees, and which affect handicapped persons, the contractor's activities are subject to the same nondiscrimination requirements that would apply if the regulated party's own employees performed them.

*Id.* Turning to the facts at hand, it is undisputed that Alitalia treated Plaintiff in a manner which he could not have been treated by Continental itself. Continental could not have required him to buy a second ticket for an attendant. It is clear that Continental's code-share agreement with Alitalia falls within the purview of section 382.7's "contractual, licensing, or other arrangements." Continental violated §§ 382.7 and 382.35 by allowing Alitalia to impose an attendant requirement on Plaintiff.[10] To find otherwise would mean

---

(1) the individual has a physical or mental impairment that substantially limits one or more major life activities;
(2) the individual has a record of such an impairment;
(3) the individual is regarded as having such an impairment.
49 U.S.C. § 41705 (1998).

**7.** 14 C.F.R. § 382.35(a) provides that "[a] carrier shall not require that a qualified individual with a disability travel with an attendant as a condition of being provided air transportation."

**8.** On April 4, 2000, the Aviation Investment and Reform Act for the 21st Century, Pub.L.

No. 106–181 ("AIR21") was enacted, making the ACAA applicable to foreign carriers.

**9.** Nondiscrimination on the Basis of Handicap in Air Travel, Final Rule, 55 Fed.Reg. 8008, 8019 (1990).

**10.** Continental also violated §§ 382.7 and 382.9 of the ACAA regulations by failing to include the required assurance of nondiscrimination in its contract with Alitalia and by failing to take adequate steps to ensure that Alitalia did not discriminate against Continental passengers. *See* United Airlines–Violations of Order 94–1–19, 49 U.S.C. § 41712, and 49 U.S.C. § 41705, DOT Consent Order

that an entity could simply contract out of their federal obligations and this would eviscerate the underlying purpose of the statute. Therefore, Plaintiff's motion for summary judgment on this count alone is GRANTED. Continental's cross-motion for summary judgment is DENIED.

## Damages

 Plaintiff seeks to recover punitive damages under the ACAA. Punitive damages may be awarded only when a plaintiff proves intentional disregard or callous indifference to an individual's federally protected rights. *Smith v. Wade*, 461 U.S. 30, 56, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983). Even where a plaintiff succeeds in establishing that an intentional violation of a protected civil right has occurred, awarding punitive damages remains outside the scope of the fact finder's discretion where there is no evidence that the defendant acts wantonly or out of malice or in reckless disregard of a federally protected rights. *Kolstad v. American Dental Ass'n*, 108 F.3d 1431, 1438 (D.C.Cir.1997).

Plaintiff asserts that summary judgment is inappropriate on this issue because genuine issues of material fact exist as to whether Defendants' actions involve reckless or callous indifference to Plaintiff's rights. However, Plaintiff has failed to point out what those genuine issues are. In fact, Plaintiff has failed to allege any conduct that would support an award of punitive damages.[11]

This entire litigation precipitated with a telephonic inquiry made by Plaintiff from his kitchen. He never purchased a ticket, nor did he present himself at the gate. Plaintiff's alleged injury is *de minimis*. He ultimately purchased a ticket with a competing airline which cost approximately $500 more than the Alitalia fare and departed from an airport approximately an hour farther away from his home. Given Plaintiff's failure to point to any conduct which rises to a level warranting an award of punitive damages, Defendants' motion for summary judgment on this issue is GRANTED.

## CONCLUSION

Plaintiff's motions for summary judgment against Alitalia and Continental based on 49 U.S.C. § 41310 are DENIED and Defendants' cross-motions for summary judgment on this issue are GRANTED. Plaintiff's motion for summary judgment against Continental based on the Air Carrier Access Act is GRANTED and Continental's cross-motion on this issue is DENIED. Furthermore, Defendants' cross-motion for summary judgment on the issue of punitive damages is GRANTED and Continental is directed to pay $600 in compensatory damages to Plaintiff.

98–9–22 at 1 (Sept. 23, 1998) (DOT explaining that: "United failed in its obligation to ensure Lufthansa's compliance with United's Rule 35UA(F)(1)(e), when Lufthansa refused to transport a passenger with a disability who could assist in his own evacuation. In failing to do so, United violated the Air Carrier Access Act itself, 49 U.S.C. § 41705, by discriminating against a qualified disabled passenger.") *Id.*

**11.** *See Tallarico v. Trans World Airlines, Inc.*, 881 F.2d 566, 571–72 (8th Cir.1989) (minor with cerebral palsy who was denied the right to fly home for Thanksgiving unaccompanied failed to allege sufficiently wanton or malicious conduct by airline to permit recovery of punitive damages); *Shinault v. American Airlines, Inc.*, 936 F.2d 796, 805 (5th Cir.1991) (quadriplegic passenger denied right to board plane due to time constraints, and who was forced to watch plane depart without him, failed to allege sufficiently wanton or malicious conduct by airline to permit recovery of punitive damages).